IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BON SECOURS                          :
HEALTH SYSTEM, INC., et al.,
                                     :
        Plaintiffs,
                                     :
v.                                              Civil Case No. GLR-18-1545
                                     :
EXPRESS SCRIPTS, INC.,
                                     :
        Defendant.

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Express Scripts, Inc.'s ("ESI")

Partial Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 21).[1] The Motion

is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018).

For the reasons outlined below, the Court will grant the Motion.

## I.       BACKGROUND[2]

This dispute arises out of ESI's agreement to manage pharmacy benefits for Plaintiff

Bon Secours Health System, Inc.'s ("BSHSI") self-insured employee prescription plan (the

---

[1] Also pending before the Court is ESI's Partial Motion to Dismiss Plaintiffs' First
Amended Complaint (ECF No. 10). ESI filed this Motion on June 26, 2016. (ECF No. 10).
In response, Plaintiffs filed a First Amended Complaint on July 24, 2018. (ECF No. 14).
When a plaintiff files an amended complaint, it generally moots any pending motions to
dismiss because the original complaint is superseded. Venable v. Pritzker, No. GLR-13-
1867, 2014 WL 2452705, at *5 (D.Md. May 30, 2014), aff'd, 610 F.App'x 341 (4th Cir.
2015). Accordingly, the Court will deny the Motion as moot.
[2] Unless otherwise noted, the Court takes the following facts from the First
Amended Complaint (ECF No. 14) and accepts them as true. See Erickson v. Pardus, 551
U.S. 89, 94 (2007) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"Plan"). (1st Am. Compl. ¶¶ 1–2, ECF No. 14). The contract at issue is the Pharmacy Benefit Management Agreement and related Amendment (the "Agreement"), effective February 1, 2010 and September 1, 2012 respectively. (Id. ¶ 1).

Three provisions of the Agreement are relevant to ESI's Motion. In pertinent parts, Section 6.3(d) of the Agreement, entitled "Indemnification," provides:

> (i) In addition to any indemnification obligations set forth in the Business Associate Agreement, ESI will indemnify and hold [BSHSI] harmless from and against any loss, cost, damage, expense or other liability, including, without limitation, reasonable costs and attorney fees ("Costs") incurred in connection with any and all third[-]party claims, suits, investigations or enforcement actions ("Claims") which may be asserted against, imposed upon or incurred by [BSHSI] and arising as a result of (A) ESI's negligent acts or omissions or willful misconduct (including those of the Mail Service Pharmacy and CuraScript), or (B) ESI's breach of this Agreement.
>
> (iii) As a condition of indemnification, the party seeking indemnification will notify the indemnifying party in writing promptly upon learning of any Claim for which indemnification may be sought hereunder, and will tender the defense of such claim to the indemnifying party. No party will be obligated to indemnify the other with respect to any claim settled without the written consent of the other.

(1st Am. Compl. Ex. 1, ECF No. 14-2; Compl. Ex. 1 ["Agreement"] § 6.3(d)(i), (iii), ECF No. 1-2; Def.'s Mem. Supp. Partial Mot. Dismiss Pls.' 1st Am. Compl. ["Def.'s Mot."] at 3, ECF No. 21-1).[3]

The Business Associate Agreement ("BAA"), an exhibit to the Agreement, contains an indemnification provision, which provides, in relevant part:

---

[3] The Court hereby lifts the seal as to these relevant provisions of the Agreement.

> Each party (the "Indemnifying Party") shall indemnify and
> hold the other party and its officers, directors, employees and
> agents (each an "Indemnified Party") harmless from and
> against any claim, cause of action, liability, damage, cost or
> expense ("Liabilities") to which the Indemnified Party
> becomes subject to as a result of third[-]party claims (including
> reasonable attorneys' fees and court or proceeding costs)
> brought against the Indemnified Party, which arise as a result
> of: (i) the material breach of this Business Associate
> Agreement by the Indemnifying Party; or (ii) the gross
> negligence or willful misconduct of the Indemnifying Party,
> except to the extent such Liabilities were caused by the
> Indemnified Party.

(Agreement Ex. C ["Bus. Assoc. Agreement"] § 6).

Among the services ESI offered its clients was the Compound Management RX
Program (the "Program"), which was designed to combat fraud and abuse by pharmacies.
(1st Am. Compl. ¶¶ 3, 29) According to ESI's own guidelines, BSHSI should have been
auto-enrolled in the Program no later than September 15, 2014, but it was not. (Id. ¶¶ 3–4,
32). In 2014 and 2015, a BSHSI employee in South Carolina, conspiring with others,
caused unauthorized or improper prescriptions for compounded medications to be issued,
which ESI processed and the Plan paid for. (Id. ¶ 48). ESI's failure to enroll BSHSI in the
Program allowed "multiple, fraudulent pharmacy claims" to be processed and paid from
September 15, 2014 through May 31, 2015, when "it appears that ESI did start to exclude
these compounds from being filled." (Id. ¶¶ 5, 40). On December 21, 2016, Plaintiff
Federal Insurance Co. ("Federal") paid a BSHSI claim for $4,571,483.96 under BSHSI's
Health Care Portfolio policy. (Id. ¶ 52).

On May 29, 2018, BSHSI filed its initial Complaint. (ECF No. 1). On July 24, 2018,
BSHSI and Federal, to whom BSHSI had assigned certain of its rights against ESI, filed

the First Amended Complaint. (1st Am. Compl. ¶ 8, ECF No. 14). The First Amended Complaint alleges three breach of contract claims: failure to perform (Count I); failure to indemnify (Count II); and, by Federal only, subrogation (Count III). (1st Am. Compl. ¶¶ 57–91). BSHSI and Federal seek money damages. (Id. at 15–16).

On August 7, 2018, ESI filed its Partial Motion to Dismiss Plaintiffs' First Amended Complaint, seeking to dismiss Count II. (ECF No. 21). On August 21, 2018, Plaintiffs filed an Opposition. (ECF No. 28). On September 4, 2018, ESI filed a Reply. (ECF No. 29).

## II. DISCUSSION

### A. Standard of Review

The purpose of a motion under Federal Rule of Civil Procedure 12(b)(6) motion is to "test[ ] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of

the claim, the complaint must allege sufficient facts to establish each element. <u>Goss v. Bank</u> <u>of America, N.A.</u>, 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting <u>Walters v. McMahen</u>, 684 F.3d 435, 439 (4th Cir. 2012)), <u>aff'd sub nom.</u> <u>Goss v. Bank of America, N.A.</u>, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. <u>Albright v. Oliver</u>, 510 U.S. 266, 268 (1994); <u>Lambeth v. Bd. of Comm'rs</u>, 407 F.3d 266, 268 (4th Cir. 2005) (citing <u>Scheuer v.</u> <u>Rhodes</u>, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, <u>United Black</u> <u>Firefighters v. Hirst</u>, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, <u>Iqbal</u>, 556 U.S. at 678.

## B.    <u>Extra-Pleading Materials</u>

The general rule is that a court may not consider extrinsic evidence when resolving a Rule 12(b)(6) motion. <u>See</u> <u>Chesapeake Bay Found., Inc. v. Severstal Sparrows Point,</u> <u>LLC</u>, 794 F.Supp.2d 602, 611 (D.Md. 2011). However, this general rule is subject to several exceptions. A court may consider documents attached to the complaint, <u>see</u> Fed.R.Civ.P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic, <u>see</u> <u>Blankenship v. Manchin</u>, 471 F.3d 523, 526 n.1 (4th Cir. 2006). In the event that any of these properly considered extra-pleading materials conflict with the "bare allegations of the complaint," the extra-pleading materials "prevail." <u>Fare Deals</u>, 180 F.Supp.2d at 683; <u>accord</u> <u>RaceRedi Motorsports, LLC v. Dart</u>

<u>Mach., Ltd.</u>, 640 F.Supp.2d 660, 664 (D.Md. 2009). Here, the Complaint refers to and relies on the Agreement, including the BAA, and ESI does not dispute its authenticity. Accordingly, the Court will consider it when assessing ESI's Motion.

## C.    <u>Analysis</u>

ESI argues that under the language of the Agreement, it is not obligated to reimburse Plaintiffs for every cost they incurred as a result of ESI's alleged negligence. At most, ESI argues, its duty to indemnify is limited to defending BSHSI from claims brought against it by third parties, which does not apply here since BSHSI has not been sued. Plaintiffs counter that the Agreement requires ESI to indemnify BSHSI for all claims resulting from ESI's negligence, including but not limited to lawsuits brought by third parties. The Court agrees with ESI. The Court will first examine the primary indemnification provision alone and then in the context of the other provisions at issue.

### 1.    **Section 6.3(d)(i) – Read in Isolation**

The more reasonable reading of Section 6.3(d)(i) obligates ESI to indemnify BSHSI only from third-party claims. Construing the language of Section 6.3(d)(i) in the manner Plaintiffs urge would require the Court to reach an unreasonable conclusion: total indemnification.

Under Missouri law,[4] the chief canon of contract construction is that "the court first looks to the plain language of the agreement." <u>TAP Pharm. Prods. Inc. v. State Bd. of</u>

_____

[4] Missouri state law governs this dispute under the Agreement's choice of law provision. (Agreement § 7.6).

Pharmacy, 238 S.W.3d 140, 143 (Mo. 2007) (en banc) (citing Andes v. Albano, 853 S.W.2d 936, 941 (Mo. 1993) (en banc)); see Withers v. City of Lake St. Louis, 318 S.W.3d 256, 261 (Mo.Ct.App. 2010) ("We first examine the plain language of the agreement to determine whether it clearly addresses the issue at hand." (citing TAP Pharm. Prods., 238 S.W.3d 140 at 143). "If that language clearly addresses the matter at issue, the inquiry ends." TAP Pharm. Prod., 238 S.W.3d at 143. Additionally, contract language that is "plain and unambiguous on its face" must be given its plain meaning. Slankard v. Thomas, 912 S.W.2d 619, 624 (Mo.Ct.App. 1995).

Plaintiffs argue that the "including, without limitation" language of Section 6.3(d)(i) provides examples of when ESI's indemnity obligations may be triggered, with third-party claims being but one example. But this interpretation would require an unreasonable and overly broad interpretation of the provision requiring ESI to indemnify BSHSI "against any loss, cost, damage, expense, or other liability" resulting from this contract, not necessarily limited by any of ESI's negligent acts. (See Agreement § 6.3(d)(i)). That is because the "negligent acts or omissions or willful misconduct" language in the Agreement also succeeds the "including, without limitation" language, making those mere examples of when ESI's indemnity obligations may be triggered. (See id.).

"[A] contract may be ambiguous if it is susceptible to more than one interpretation, which is a legal issue determined by the court." Whelan Sec. Co. v. Kennebrew, 379 S.W.3d 835, 846 (Mo. 2012) (en banc) (citing Eisenberg v. Red, 38 S.W.3d 409, 411 (Mo. 2001) (en banc)). A contract's term is ambiguous if reasonable people "may fairly and

honestly differ in their construction of the terms." State ex rel Greitens v. Am. Tobacco Co., 509 S.W.3d 726, 737–38 (Mo. 2017) (en banc) (quoting Eisenberg, 38 S.W.3d at 411).

Here, Section 6.3(d)(i) is not ambiguous because a reasonable contracting party would likely not indemnify the other party for all acts arising from the contract, regardless of any nexus with a negligence finding. In essence, Plaintiffs would have the Court read in a missing comma after "("Costs")." This would result in an unreasonable reading of section 6.3(d)(i), that is, "ESI will indemnify and hold Sponsor harmless from and against any loss, cost, . . . including, without limitation . . . ("Costs")[,] incurred with any and all third-party claims . . . ."[5] (Agreement § 6.3(d)(i)) (emphasis added). A contract is ambiguous if it is susceptible to more than one interpretation, Whelan, 379 S.W.3d at 846, but ambiguity requires that reasonable people "may fairly and honestly differ in their construction of the terms," Greitens, 509 S.W.3d at 737–38. ESI's reading of the indemnification provision is objectively more plausible than the Plaintiffs' overly broad reading. Read alone, Section 6.3(d)(i) is therefore unambiguous and, at most, obligates ESI to indemnify BSHSI only in cases of relevant third-party claims.

2.     Section 6.3(d)(i) – Read in Context

Reading Section 6.3(d)(i) in the context of the Agreement supports the conclusion the Agreement only requires that ESI indemnify BSHSI as against third-party claims.

_____

[5] This reading would state a list of costs and liabilities before the comma, modified by the "incurred with any and all third-party claims" language in the provision. (Agreement § 6.3(d)(i)).

### a.    Business Associate Agreement

Plaintiffs argue that the BAA, to which Section 6.3(d)(i) refers, already includes an explicit, narrower third-party indemnification provision, so limiting Section 6.3(d)(i) to third-party indemnification renders the BAA meaningless. They contend that the "[i]n addition to" preface of Section 6.3(d)(i) signals that the Agreement's indemnification provision is broader than that of the BAA. The Court disagrees.

A contract must be construed "as a whole so as not to render any terms meaningless," Chochorowski v. Home Depot U.S.A., 404 S.W.3d 220, 229 (Mo. 2013) (en banc) (citing State ex rel. Riverside Pipeline Co. v. Pub. Serv. Comm'n, 215 S.W.3d 76, 84 (Mo. 2007) (en banc)). "A construction that gives a reasonable meaning to each term and harmonizes all provisions is preferred over a construction that renders some provisions without function or sense." Id. (citing Riverside Pipeline, 215 S.W.3d at 84).

While contracts should be interpreted to give reasonable meaning to each term and harmonize all provisions, Plaintiffs' reading misinterprets the scope of the BAA. The BAA, though limited to third-party claims, only applies to violations of Health Insurance Portability and Accountability Act ("HIPAA") regulations related to the confidentiality of private health information ("PHI"). (See Bus. Assoc. Agreement at 25). The Agreement's indemnification provision, applying to all relevant third-party claims, is, in fact, broader than the BAA, which is limited to HIPAA violation-related third-party claims. Therefore, reading Section 6.3(d)(i) to only apply to third-party indemnification harmonizes the two indemnification provisions.

### b. Section 6.3(d)(iii)

Reading Section 6.3(d)(i) in conjunction with Section 6.3(d)(iii) also does not alter the Court's conclusion. Plaintiffs contend that Section 6.3(d)(iii), which begins, "[a]s a condition of indemnification," does not apply here because there was no defense to tender against a third-party claim. ESI contends that, taken together, the only reasonable way to read Sections 6.3(d)(i) and 6.3(d)(iii) is to impose upon ESI a duty to indemnify BSHSI from "lawsuits, investigations, or enforcement actions brought by third parties, for which BSHSI must mount a defense that it can thereby tender to [ESI] or settle." (Def.'s Mot. at 7). Both interpretations are reasonable, as it is not clear that Agreement Section 6.3(d)(iii) expressly modifies Section 6.3(d)(i). But either interpretation is consistent with the conclusion that Agreement obligates ESI to indemnify BSHSI only from relevant third-party claims.

In sum, ESI's reading of the Agreement gives reasonable meaning to Sections 6.3(d)(i) and 6.3(d)(iii) of the Agreement and the BAA and harmonizes the three provisions. Chochorowski, 404 S.W.3d at 229 (citing Riverside Pipeline, 215 S.W.3d at 84). The Court, therefore, concludes that the Agreement obligates ESI to indemnify BSHSI only from third-party claims. Accordingly, the Court will grant ESI's Motion.

### III. CONCLUSION

For the foregoing reasons, the Court will grant ESI's Partial Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 21). A separate Order follows.

Entered this 28th day of March, 2019.


_____/s/_____
George L. Russell, III
United States District Judge